IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
AIKEN DIVISION

Milton Lewis,               )
                            ) C/A No. 1:07-3231-MBS
            Plaintiff,      )
                            )
    vs.                     )
                            ) **OPINION AND ORDER**
Norfolk Southern Railroad, Inc., )
                            )
            Defendant.      )
_____)

The within action arises out of a train collision and derailment that took place on property of Avondale Mills in Graniteville, South Carolina, on January 6, 2005. As a result of the derailment, a tank car containing chlorine ruptured. The chlorine vaporized and became chlorine gas that contaminated the surrounding area, including the Avondale Mills facilities. Defendant Norfolk Southern Railway Company[1] previously has admitted simple negligence as to its crew members' failure to realign the railroad track.

Plaintiff Milton Lewis was employed by Labor Ready, a temporary employment agency, to aid in cleaning the Avondale Mills facility after the derailment. Plaintiff worked under the supervision of BMS, a contractor hired by Avondale Mills to clean the facilities. Plaintiff's job consisted of "cleaning and scraping the chemical stuff off from under the machines and walls and the ceiling and the floors." Entry 51-4, 30. Plaintiff held this position from July 23, 2005 until December 17, 2005. Plaintiff contends that after he had been working about three months, he began having breathing difficulties. Id.

Plaintiff brought the within action on September 25, 2007. Plaintiff alleges that exposure

---

[1] Defendant is improperly denominated as "Norfolk/Southern Railroad, Inc." in the caption.

to chlorine and other chemical contamination at the Avondale Mills facilities caused severe and permanent injury to his lungs. Plaintiff asserted causes of action for negligence (First and Second Causes of Action) and battery (Third Cause of Action).

Defendant filed a motion for summary judgment on April 14, 2009. At that time, Defendant asserted that it owed no cognizable duty to Plaintiff, and that there was no evidence that Defendant intentionally injured Plaintiff. By order filed November 4, 2009, the court granted summary judgment as to the first and third causes of action. However, with respect to the second cause of action, the court concluded that Defendant owed Plaintiff a duty to warn of the danger appertaining to the cleanup of the Avondale Mills facilities. Accordingly, the court denied Defendant's motion for summary judgment as the second cause of action.

This matter now is before the court on Defendant's motion for summary judgment as to the second cause of action, which motion was filed on April 23, 2010. Plaintiff filed a response in opposition on May 31, 2010, to which Defendant filed a reply on June 8, 2010. Defendant also filed a motion in limine to exclude testimony of John Michael Culclasure on June 8, 2010. Plaintiff filed a response in opposition to the motion in limine on June 24, 2010. The court held a hearing on July 1, 2010. The court concludes that Defendant's motions should be granted.

I. <u>DISCUSSION</u>

A. <u>Defendant's Motion for Summary Judgment</u>

Defendant has moved for summary judgment pursuant to Fed. R. Civ. P. 56. Rule 56 provides that summary judgment shall be granted when a moving party has shown "[that] the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party

is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The evidence presents a genuine issue of material fact if a "reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986). The moving party bears the burden of proving that there are no facts from which a jury could draw inferences favorable to the non-moving party. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

Law/Analysis

Defendant first asserts that there was no hazard for which it had a duty to warn at the time Plaintiff commenced working at the Avondale facility. Defendant further argues that, to the extent it possessed a duty to warn Plaintiff, it did provide adequate warnings. Finally, Defendant asserts that Plaintiff cannot establish causation because it has no competent expert to rebut Defendant's experts regarding the existence of chlorine at the site during the time Plaintiff was present.

To prove a negligence claim, a plaintiff must demonstrate a duty of care owed by the defendant, a breach of that duty by a negligent act or omission, and damage proximately resulting from the breach. Moore v. Barony House Restaurant, LLC, 674 S.E.2d 500 (S.C. Ct. App. 2009).

1. Did Defendant owe a duty specifically to Plaintiff to warn of the risks of exposure to chlorine

In its prior motion for summary judgment, Defendant asserted that it had no relationship that would give rise to a legally cognizable duty. It is true that there is no general duty to warn a third person or potential victim of danger. However, an exception exists when the defendant creates the risk of harm. See Doe v. Marion, 605 S.E.2d 556 (S.C. Ct. App. 2004). As noted hereinabove, the court previously determined that Defendant owed Plaintiff a duty to warn of dangers related to the cleanup of the Avondale Mills facilities because it created the risk of harm.

In its current motion for summary judgment, Defendant asserts that facts developed during

discovery demonstrate that there was no chlorine inhalation hazard present during the time that Plaintiff was employed at the Avondale Mills facilities. Defendant argues that, as it a result, it owed no duty to Plaintiff to warn because no hazard existed.[2] The court agrees.

In support of its position, Defendant notes that all federal and state authorities agreed to lift evacuation orders in Graniteville, South Carolina by the end of January 2005, without restriction, approximately six months before Plaintiff commenced working. Defendant provides the affidavit of Dr. Jay Gandy, a senior toxicologist with the Center for Toxicology and Environmental Health (CTEH) as well as professor and chair of the Department of Environmental and Occupational Health of the University of Arkansas for Medical Sciences (Entry 82-3, ¶ 1). CTEH was hired by Defendant to conduct air monitoring and sampling, public health protection, property inspections, and other field sampling immediately after the derailment. Id., ¶ 3. CTEH monitored the air for more than two weeks in the various zones around the derailment site. Id., ¶ 6. Dr. Gandy attests that after January 12, 2005, the presence of chlorine was at best negligible for a limited period of time, and any chlorine in the air was not sufficient to cause injury. Id., ¶ 13. Dr. Gandy states that CTEH did not ascertain any detectable levels of chlorine in Graniteville attributable to the derailment after the evacuation orders were lifted and reoccupation of the homes and businesses in the affected areas began. Id., ¶ 15.

Dr. Gandy further avers that chlorine is highly reactive and that it immediately interacts with any component with which it comes into contact. Id., ¶ 16. According to Dr. Gandy, when chlorine comes into contact with a corrodible surface, it immediately oxidizes to form a chloride salt. Id., ¶

---

[2] Defendant acknowledges that this argument is different from the argument concerning the existence of a duty that it posited in its prior motion for summary judgment. Entry 82-1, 13.

4

17. Once oxidization occurs, there is no inhalation hazard for individuals working with and around surfaces corroded by chlorine. Id. Dr. Gandy states that no respiratory protective gear was necessary in the Avondale Mills facilities after January 17, 2005, although some persons wore dust masks. Id., ¶ 20. Dr. Gandy also attests that he reviewed the products that were used by Plaintiff during the clean-up, and that they contained no chemicals that could have caused a reaction with any surface corroded by chlorine that would have resulted in the formation of inhalable toxic fumes. Id., ¶ 21. Dr. Gandy further avers that the cleaning process described in the depositions of Plaintiff and his supervisors at the Avondale Mills facilities presented no inhalation hazard. Id., ¶ 21. Dr. Gandy concludes that it is not plausible Plaintiff was exposed to chlorine and inhaled it in July 2005. Id., ¶ 22.

In rebuttal, Plaintiff contends that Defendant left a "toxic cocktail" at Avondale Mills that had to be cleaned up with another "cocktail of chemicals." Plaintiff asserts that the scrubbing, heat, and humidity released particles into the air that could have been inhaled. Plaintiff attaches to his response expert reports of John Slater and Lisa Detter-Hoskin that were prepared in conjunction with related litigation regarding the efficacy of the cleaning methods utilized at the Avondale Mills facilities. These reports do not address the question of air quality and whether the environment was dangerous for clean-up personnel such as Plaintiff.

The court concludes that no reasonable jury could find that Defendant had a duty to warn of a hazard that no longer existed at Avondale Mills at the time of Plaintiff's presence. Defendant's motion for summary judgment is granted as to this issue.

> 2. <u>If a duty to warn Plaintiff of a potential chlorine inhalation hazard existed, was it breached</u>.

Defendant further argues that, to the extent it owed a duty to Plaintiff, it discharged its duty because (1) Plaintiff received training regarding potential health hazards, and (2) Plaintiff's supervisors from BMS received training regarding the same. The court agrees.

Defendant submits depositions of Plaintiff, Mike Neal, and Mike Detenancour. Plaintiff testified that he was not aware of the nature of the spill before he found out that a job was available in Graniteville through Labor Ready. According to Plaintiff, he was told he would be cleaning up a spill (Entry 82-2, 7). When he got to Graniteville, he was briefed and told that he would be cleaning up chemicals and that it was safe. <u>Id.</u> He was given a paper suit and mask to wear. According to Plaintiff, after he entered the facilities he was told of the presence of chloride, but that it was safe. <u>Id.</u> at 8. Plaintiff's supervisor told him it was safe to go without masks. <u>Id.</u> at 9.

Mike Neal of BMS testified that he was required to watch videos and was told by the health and safety officer about the train derailment and that they were there to clean chloride (Entry 83, 4 5). Neal testified that all employees coming to work on the clean up were required to watch the videos and were told about the derailment and contamination. <u>Id.</u> at 6-7. Neal never encountered any problems with air quality as a result of the water and detergent that were used. <u>Id.</u> at 8. He was not aware of chlorine being in the air at the Avondale Mills facilities. <u>Id.</u> Neal also testified that MSDS (Material Safety Data Sheet) sheets were available for the workers to review, and that he reviewed with his crew the information provided in the safety meetings. <u>Id.</u> at 15.

Mike Detenancour testified that he was required to undergo at least eight hours of training before he could commence working at the Avondale Mills facilities (Entry 83-1, 5). He testified that

he was required to become knowledgeable regarding the chemicals to be used on the job and what chlorine could do to harm workers if it was not handled correctly. Id. Detenancour testified that it was the various supervisors' responsibility to monitor the workers. Id. He testified that the cleaning agent utilized for the clean-up was very mild and that MSDS sheets were available for review by workers on site. Id. at 7-8.

Plaintiff denies ever having received training or notice of any kind that he was being exposed to anything dangerous (Entry 86-1, ¶ 5). He also denies knowing what an MSDS sheet is, and denies being advised as to what they contained or how he might access them. Id. According to Plaintiff, there were numerous chemical odors in the air from the cleaning compounds, including smells from bleach or chloride. Id. at ¶ 3.

The court finds Plaintiff's contentions that he did not receive appropriate warnings to be not credible. However, even assuming for purposes of summary judgment that Plaintiff did not received adequate warnings of any hazard at the Avondale Mills facilities, Defendant still prevails on its motion because it is uncontroverted that Defendant provided warnings to Plaintiff's superiors.

In Lane v. Bethlehem Steel Corp., 667 A.2d 962 (Md. Ct. App. 1995), the Maryland Court of Appeals determined that notice to supervisory personnel of an independent contractor by the employer/premises owner discharges the employer/premises owner's duty to warn the independent contractor's employee of a latent danger. A similar result was reached in Honea v. West Virginia Pulp & Paper Co., 380 F.2d 704 (4th Cir. 1967), wherein the Court of Appeals for the Fourth Circuit stated that the defendant "was not required to seek out all of [a contractor's] employees and warn each of them of . . . any patent danger incident to working on the premises. We hold that [the defendant] had a right to rely upon [the contractor's] supervisory personnel to relay the warning

notice, which they had received, to [the contractor's] other employees who were at all times under [the contractor's] sole direction and supervision." In Alaska, an employer/landowner discharges his duty to warn an employee if he has warned the independent contractor or if the independent contractor already knows of the dangerous condition. Exxon Corp. v. Alvey, 690 P.2d 733 (Alaska 1984).

The court finds these cases to be instructive. The court concludes that no reasonable jury could find that Defendant breached any duty that it had to warn Plaintiff of a potential health hazard at the Avondale Mills facilities. Defendant's motion for summary judgment is granted as to this issue.

3. <u>Even if Plaintiff could establish duty and breach, can Plaintiff prove causation</u>

Defendant contends that Plaintiff cannot establish that his health problems were caused by Defendant. The court agrees.

To prove causation, a plaintiff must demonstrate both causation in fact and legal cause. Schmidt v. Courtney, 592 S.E.2d 326, 326 (S.C. Ct. App. 2003) (citing cases). Causation in fact is proved by establishing the plaintiff's injury would not have occurred "but for" the defendant's negligence. Id. (citing cases). Defendant contends (1) that Plaintiff cannot establish that progression of his disease is related to the release of chlorine because (a) there was no airborne chlorine in Avondale Mills when he was working there, and (b) chloride salt does not pose any danger of an inhalation injury; and (2) that Plaintiff has no expert testimony to establish that the progression of the bullous emphysema is due to chlorine inhalation, particularly given Plaintiff's history of smoking tobacco and marijuana. The court already had concluded that no competent evidence establishes the presence of chlorine in the Avondale Mills facility during Plaintiff's presence in July through

December 2005. Therefore, the court turns to Defendant's second argument.

Defendant has provided medical records indicating that Plaintiff was diagnosed with bullous emphysema by Alexander O. Sy, M.D. in September 2004, nearly one year prior to Plaintiff's employment at Avondale Mills (Entry 83-2). Dr. Sy testified in his deposition that Plaintiff told him in September 2004 that he worked as a manual laborer and that he may have been exposed to asbestos while stripping off paint. Id. at 10. Plaintiff also told him that he had worked previously with hydrofluoric acid. Id. Dr. Sy's records from his examination reveal that Plaintiff presented with ongoing tobacco abuse. Id. at 7. Dr. Sy testified that smoking tobacco will accelerate a decline in lung function. Id. at 8. Plaintiff also presented with chemical exposure to cannabis, which was found on his urine drug screen upon admission. Id. at 9. Dr. Sy testified that there is an association of marijuana or cannibis smoking with obstructive lung disease. Id. Medical records submitted by Defendant reflect Plaintiff's continued use of tobacco, marijuana, and crack cocaine after September 2004. See, e.g., Entry 83-2, 21, 23, 24, 25, 29, 30, 31, 32, 34, 36. See also Entry 83-3, 2-3 (Affidavit of Alan R. Leff, M.D. regarding causes of acquired bullous emphysema).

Plaintiff relies upon the affidavit of John Michael Culclasure, who attests that he previously worked as a registered nurse for twelve years (Entry 86-2, 1).[3] Culclasure states that he has developed some knowledge and expertise in the causes and treatment of COPD as suffered by Plaintiff. Id. Culclasure opines that the cleaning process caused the harmful chemical mixture to become airborne regardless of the solvents or other cleaning solutions used. Id. at 2. He states that "it does not seem logical" that Plaintiff's use of marijuana and cigarettes caused the worsening of

---

[3] Culclasure's license to practice nursing was suspended in 2004 for forging prescriptions and otherwise obtaining controlled substances. (Entry 88-2).

9

his emphysema because his use was not "frequent or intense enough to be the cause." Id. According to Culclasure, "there is a direct correlation of time between his exposure to the chemical mixture at Graniteville and the permanent worsening of his condition. Therefore the chemical mixture at Graniteville is the most likely cause of the exacerbation of his pre-existing condition resulting in permanent and debilitating respiratory illness." Id. Culclasure states without evidence that hydrofluoric acid was present in a massive amount in the toxic mixture at the Graniteville site prior to Plaintiff's employment, and therefore must have been present in compounds and remnants in the debris to which Plaintiff was exposed. Id.

Culclasure's opinions are purely speculative and not supported by competent evidence. See Fed. R. Evid. 702. Further, in South Carolina an expert cannot rely on the fact that an accident occurred in order to prove negligence. As the South Carolina Court of Appeals has explained, "[t]he plaintiffs' burden of proof cannot be met by relying on the theory that the thing speaks for itself or that the very fact of injury indicates a failure to exercise reasonable care." Reiland v. Southland Equip. Serv. Inc., 500 S.E.2d 145, 154-55 (S.C. Ct. App. 1998). Culclasure cannot establish causation based solely on the temporal proximity between Plaintiff's presence at Avondale Mills and his allegedly worsening medical condition.

Moreover, Culclasure's opinion appears to assert that the cleaning products used by Plaintiff exacerbated his condition. There is no foundation in the record for a finding that Defendant in any way directed or controlled the decisions as to what cleaning products BMS would utilize in its clean-up operations at Avondale Mills. The court concludes that no reasonable jury would find that Plaintiff can establish causation by relying on Culclasure's opinion. Defendant's motion for summary judgment is granted as to this issue.

B.  Motion in Limine

Defendant contends that Culclasure's opinions are not admissible because he is not qualified to render an opinion, and that his opinions are not supported by the record and are without any basis in science and fact. The court agrees.

The admission of expert testimony is governed by Rule 702, which provides that:

> [i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Under Rule 702, the court must determine whether an expert is qualified to testify. See Fernandez v. Spar-Tek Indus., Inc., 2008 WL 2185395 at *1 (D.S.C. May 23, 2008). The court also must determine whether the expert's testimony is admissible by asking whether the testimony is reliable[4] and relevant. In this case Culclasure is not a toxicologist able to render opinions concerning the toxicity of chlorine, interpret MSDS sheets, assess air quality after a chlorine release, or analyze the impact of a cleaning process. Culclasure is not a pulmonologist or pharmacologist able to assess the impact of the use of marijuana, cocaine, and cigarettes on emphysema or the pulmonary system,

---

[4] Daubert v. Merrell Dow Pharms., 509 U.S. 579 (1993), set forth five factors to apply in evaluating the reliability of an expert's opinion under Rule 702: (1) whether a theory or technique relied on by the expert has been tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) the known or potential rate of error; (4) whether standards exist to control the operation of the theory or technique; and (5) whether the theory or technique is generally accepted within a relevant scientific community. The Court of Appeals for the Fourth Circuit has explained that "[a] reliable expert opinion must be based on scientific, technical, or other specialized knowledge and not on belief or speculation, and inferences must be derived using scientific or other valid methods." Oglesby v. General Motors Corp., 190 F.3d 244, 250 (4th Cir. 1999). Generally, "[a]n expert's subjective, personal beliefs or speculation fail to satisfy the requirement of reliability." In re Bausch & Lomb, Inc. Contact Lens Solution Products Liability Litigation, 2009 WL 2750462 at *9 (D.S.C. Aug. 26, 2009) (Norton, C.J.)

11

the status of Plaintiff's lungs before and after his work at Avondale Mills, the impact of certain medications on lungs, or, in short, to render any opinion as to causation of any medical condition. Further, as set forth hereinabove, Plaintiff's opinions are not derived using scientific or other valid methods,

The court concludes that Culclasure is not qualified to testify, and that his opinions are not reliable. Culclasure's opinions do not, "as a matter of logic . . . eliminate other equally plausible causes" of Plaintiff's allegations of personal injury. See Oglesby, 190 F.3d at 250. Defendant's motion in limine is granted.

## II. CONCLUSION

For the reasons stated, Defendant's motion for summary judgment (Entry 82) is **granted**. Defendant's motion in limine (Entry 88) also is **granted**.

**IT IS SO ORDERED**.

/s/ Margaret B. Seymour
United States District Judge

Columbia, South Carolina

July 16, 2010.